IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RICKY CHOJNACKI,

                Plaintiff,                OPINION AND ORDER

  v.

                                                19-cv-432-wmc

ANDREW SAUL,
Commissioner of Social Security,

                Defendant.

---

Plaintiff Ricky Chojnacki seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons that follow, the Commissioner's decision will be remanded for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four.

BACKGROUND[1]

Chojnacki, a former laborer, applied for disability insurance benefits on March 9, 2015, alleging disability beginning April 27, 2011, from the following impairments: degenerative disc disease; peripheral neuropathy; carpal tunnel syndrome; epicondylitis; attention deficit hyperactivity disorder; and anxiety disorder. At the time he applied for benefits, Chojnacki was just 43 years old. Reviewing his claim at the initial stage and again on reconsideration, consulting psychologists from the state disability agency concluded that although Chojnacki had anxiety and ADHD, neither of his impairments imposed more

---

[1] These facts are drawn from the Administrative Record ("AR").

than mild limitations on his ability to work, meaning that his impairments were not "severe" as that term is defined in the Social Security regulations. 20 C.F.R. § 404.1521(a) (impairment is not severe "if it does not significantly limit your physical or mental ability to do basic work activities"). (AR 81, 93.) On November 15, 2017, Chojnacki had a video hearing before Administrative Law Judge Amy L. Rosenberg. Appearing with counsel, Chojnacki testified about his past work and his impairments. Amelia Shelton, a vocational expert ("VE"), also testified.

Chojnacki testified that he could no longer work because of constant pain in his neck, shoulders, lower back, arms, and legs. (AR 57.) Specifically, Chojnacki explained that he could not stand or sit for extended periods of time, had to change positions frequently, had trouble lifting even 10 pounds, dropped items frequently, and was uncomfortable all day. (AR 58.) According to Chojnacki, his ADHD also affected his ability to remember things, including having to read things more than once, and watch a movie several times before he understood it. (AR 60-62.) Finally, Chojnacki testified that his anxiety made him feel like he was "rushed" and not "good enough to do the job." (*Id*.) In contrast, based on the ALJ's formulation of Chojnacki's residual functional capacity ("RFC"), VE Shelton testified that there were still jobs in significant numbers in the national economy that Chojnacki could perform. (AR 68-69.)

On February 5, 2018, the ALJ issued an unfavorable decision on Chojnacki's application. (AR 31-40.) Applying the commissioner's five-step sequential evaluation for disability claims, *see* 20 C.F.R. § 404.1520, the ALJ found at step one that Chojnacki had not engaged in substantial gainful activity after his alleged onset date and at step two that

2

Chojnacki had a number of severe physical and mental impairments, including ADHD and anxiety. (AR 33-34.)

At step three, the ALJ concluded that Chojnacki did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 34-36.) In considering Chojnacki's various limitations, the ALJ expressly addressed his capacity to function mentally, finding that Chojnacki had a moderate limitation in concentrating, persisting, or maintaining pace ("CPP"). (AR 35.) In support of this finding, the ALJ made the following observations with regard to Chojnacki's mental functioning:

> He was able to drive. The ability to operate a moving vehicle on city streets and highways certainly requires a level of concentration while belies a finding of more than moderate limitations in this area. The claimant was able to handle his own money. He did not always finish what he started and he had difficulty paying attention.

(AR 35.) The ALJ went on to clarify that Chojnacki's CPP limitation was "not a residual functional capacity assessment but [was] used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (AR 36.) The ALJ observed that the RFC assessment would require a "more detailed assessment," and she further advised that "the following residual functional capacity assessment reflects the degree of limitation that I found in the [step three] mental functional analysis." (Id.)

At step four, the ALJ found that Chojnacki had the following RFC through his date last insured:

> [C]laimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). In addition, he was able to occasionally climb, balance, stoop, kneel, crouch,

3

>and crawl. He was able to frequently, but not constantly, handle, finger, and feel bilaterally. The claimant could understand, remember, and carr[y] out simple, routine, tasks, and could make simple work-related decisions.

(Id.) Elaborating on this finding, the ALJ explained that she had given "partial weight" to the State Disability Determination Services medical and psychological consultants, who found that Chojnacki could work at the light exertional level but had only mild psychological limitations. She also found, however, that these experts "did not have the benefit of hearing level evidence, which supported the need for manipulative limitations, as well as psychological limitations, based on the claimant's subjective complaints and objective evidence." (AR 38.) Nevertheless, the ALJ found that while the evidence established underlying medical conditions capable of producing some limitations, it did not "confirm disabling limitations arising from these impairments, nor does it support a conclusion that the objectively determined medical conditions are of such severity that they could reasonably be expected to give rise to disabling limitations." (AR 38.) At most, the ALJ found that plaintiff experienced "no greater than . . . mild to moderate functional limitations upon his ability to perform basic work activities." (Id.)

While the ALJ found these limitations meant Chojnacki was unable to perform his past relevant work because it exceeded a light exertional level (AR 39), she found that he retained the residual functional capacity

>To perform light work as defined in 20 CFR 404.1567(b). In addition, he was able to occasionally climb, balance, stoop, kneel, crouch, and crawl. He was able to frequently, but not constantly, handle, finder, and feel bilaterally. The claimant could understand, remember, and carried[] out simple, routine tasks, and could make simple work-related decisions.

(AR 36.) Relying on the VE's answer to a hypothetical question including these

limitations, the ALJ then found at step five that Chojnacki could make a vocational adjustment to jobs existing in significant numbers in the national economy. Specifically, the VE identified the following examples of jobs Chojnacki could peform with his RFC: marker (162,000 jobs nationally); inspector and hand packager (103,00 jobs nationally); and bench assembler (166,00 jobs nationally). (AR 39-40.)

OPINION

Judicial review of a final decision by the Social Security Commissioner is authorized by 42 U.S.C. § 405(g). An ALJ's findings of fact are considered "conclusive," so long as they are supported by "substantial evidence." § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the Commissioner's findings, the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). At the same time, the court must conduct a "critical review of the evidence" before affirming the Commissioner's decision. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, then the court must remand the matter for further proceedings. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Here, plaintiff principally argues that the ALJ erred by failing to incorporate her own findings regarding plaintiff's limitations in concentrating, persisting or maintaining pace ("CPP") into the RFC and the hypothetical posed to the VE. As this court recently observed:

> An RFC must incorporate all of a claimant's limitations that are reasonably supported by the record, and an ALJ is required "to orient the VE to the totality of a claimant's limitations." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). In particular, the Seventh Circuit has explained "[a]gain and again, . . . that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476-77 (7th Cir. 2019) (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). Even so, an ALJ need not use the specific terms "concentration, persistence, and pace" in the ultimate RFC or VE hypothetical where adequate alternative phrasing is employed. *O'Connor-Spinner*, 627 F.3d at 619.

*Somers v. Saul*, No. 19-CV-51-WMC, 2020 WL 582370, at *3 (W.D. Wis. Feb. 6, 2020).

In this case, the ALJ purported to accommodate plaintiff's "moderate" limitations in CPP by restricting him to simple, routine work that required only simple, work-related decisions. As plaintiff accurately notes, however, the Court of Appeals for the Seventh Circuit has routinely criticized ALJs for including similar limitations in their RFC assessments and corresponding hypotheticals, explaining that such restrictions merely describe unskilled work and fail to account for deficiencies in concentration, persistence or pace. *See, e.g., O'Connor-Spinner*, 627 F.3d at 620; *see also Moreno*, 882 F.3d at 730 (rejecting argument that ALJ's reference to simple work instructions and to routine, low-stress work reasonably accommodated Moreno's moderate difficulties in concentration, persistence or pace); *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015) (failure to define "fast paced production" was problematic); *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009) ("simple, routine tasks" did not account for limited ability to understand instructions); *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004) ("simple, routine" tasks did not adequately account for "impairment in concentration"); *Craft v. Astrue*, 539 F.3d 668, 677-

78 (7th Cir. 2008) ("simple, unskilled work" does not account for difficulty with memory, concentration or mood swings).

As the Commissioner notes in response, this is not the end of the analysis. (Commissioner's Memorandum (dkt. #14) 10.) Indeed, after reviewing its decisions in *Stewart*, *Young*, and *Craft*, the Seventh Circuit has expressly rejected the notion that "a limitation to unskilled work can *never* adequately account for moderate limitations in concentration, persistence and pace." *Milliken v. Astrue*, 397 F. App'x 218, 221 (7th Cir. 2010) (emphasis in original). Moreover, the Seventh Circuit has eschewed a "magic words requirement" for expressing a claimant's CPP limitations in the RFC and corresponding hypothetical. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

Nevertheless, the court *does* require the ALJ to "tailor[ ] [the claimant's] RFC to her CPP limitations without *assuming* that restricting her to unskilled work would account for her mental health impairments." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) (emphasis added). *Martin* provides a good example of such tailoring:

> Start with concentration. The second ALJ found that "[Martin] could maintain the concentration required to perform simple tasks, remember simple work-like procedures, and make simple work-related decisions." Moving to persistence, the ALJ, in defining and tailoring the RFC, further determined that Martin could stay on-task and thereby "meet production requirements." Of course, even if someone is on-task, it is still possible she may operate at such a slow pace that an employer would not find her work satisfactory. Hence, the second "P"— pace—must enter the equation. The ALJ incorporated pace-related limitations by stating that Martin needed flexibility and work requirements that were goal-oriented.

*Martin*, 950 F.3d at 374. Thus, unlike in this case, the ALJ in *Martin* "showed her work" and addressed all three components of CPP in the RFC assessment.

7

This is not to suggest that every RFC in a case involving moderate CPP limitations must be crafted in the same terms as the RFC in *Martin*. Rather, the lesson of *Martin* and the other Seventh Circuit opinions on this subject appears to be a familiar one -- namely, that the ALJ must provide enough reasoning to "build an accurate and logical bridge from the evidence to the conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). For example, in *Milliken*, the Seventh Circuit upheld an ALJ's finding that a claimant's CPP limitation *was* addressed by limiting her to "unskilled work tasks" where supported by a medical expert's opinion "that despite claimant's [CPP] limitations, she could still perform unskilled work." 397 F. App'x at 222.

Contrary to the Commissioner's argument, the ALJ did not do that here. On the contrary, the ALJ actually found that, "based on the claimant's subjective complaints and objective evidence," plaintiff Chojnacki had *greater* limitations in CPP than the state agency psychologists had found (AR 38), and further explained that plaintiff's "allegations of disabling symptoms and pain were all considered in the light most favorable to the claimant." (AR 37.) Yet, rather than explain how she arrived at the conclusion that plaintiff could still perform "simple, routine tasks" with "simple-work related decisions" in spite of his moderate limitations in CPP, the ALJ actually appeared to credit plaintiff's allegation that "he did not always finish what he started and he had difficulty paying attention." (AR 35.) If anything, such a limitation would suggest, at the very least, that plaintiff might have problems maintaining persistence and pace, even when performing simple, routine tasks. Yet it is unclear from the ALJ's decision whether she accounted for those limitations in crafting the RFC assessment, much less how she arrived at the

conclusion that plaintiff retained the RFC to do "simple, routine work that required only simple, work-related decisions."

The Commissioner attempts to fill the gaps in the ALJ's reasoning by pointing to evidence cited in her decision, namely: (1) the findings by the state agency psychologists that plaintiff's mental limitations were only mild; (2) clinical notes showing that during mental health evaluations, plaintiff's attention and concentration were functionally intact with no more than average distractibility; and (3) plaintiff's report of significant improvement in his ADHD symptoms with medication. To be sure, this objective medical evidence would support a finding of mild mental limitations, and the deferential standard of review does not demand perfect decision writing. However, the ALJ herself *found* moderate limitations in CPP without any medical underpinning or other explanation for how that translates into appropriate RFC limitations, much less simple, routine work, and deference:

> does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination.

*Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014), as amended on denial of reh'g (Oct. 24, 2014) (citation omitted). *See also Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), as amended on reh'g in part (May 12, 2010) (agency's lawyers cannot defend agency's decision on ground agency itself did not embrace) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)).

That bridge is lacking here. While the record arguably supported a finding of lesser CPP limitations, the ALJ concluded that they were moderate, thus triggering her obligation

9

to account for those limitations in the RFC. The ALJ's decision offers no such accounting -- other than the ALJ's unsupported assumption that in spite of his moderate CPP limitations, plaintiff could perform simple and routine tasks – and thus is simply without support under Seventh Circuit law. *See Martin*, 950 F.3d at 374 (affirming decision of ALJ who "did not take any of the shortcuts on [plaintiff's] CPP limitations that we have found problematic in other cases."). Accordingly, this case must be remanded for further explanation or a new RFC assessment that accounts for all of plaintiff's mental limitations.

On remand, the ALJ should also obtain updated medical opinions that account for the results of plaintiff's January 2016 cervical MRI scan and an April 2017 lumbar MRI scan, neither of which was available at the time the state agency medical consultants reviewed plaintiff's medical records. (AR 62-63 (cervical MRI) and AR 777-78 (lumbar MRI).) As plaintiff notes, the ALJ did not mention the lumbar MRI, so it is unclear whether she reviewed it. With respect to the cervical MRI, the ALJ arguably strayed outside her expertise by finding the results consistent with an RFC for a limited range of light work. *See, e.g., Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("[A]n ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so."). Although the court is not convinced that either of these missteps would warrant remand in its own right, the question is close enough that an updated medical review at the agency level is justified.

Finally, although not challenged by plaintiff, the court is troubled by the ALJ's failure to provide a reasoned discussion of plaintiff's subjective complaints and the extent to which those allegations were consistent with the record as a whole, as required by Social

Security Ruling 16-3p. *See* Social Security Ruling 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 ("In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."). Although the ALJ stated that she had considered plaintiff's subjective complaints "in the light most favorable to the claimant," AR 37, she did not credit them fully, but instead appears to have credited them *only* to the extent they were supported by the objective medical evidence.[2] However, "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015). Accordingly, on remand, the ALJ should evaluate plaintiff's subjective complaints in accordance with SSR 16-3p, considering not just the objective medical evidence but the record as a whole, including the plaintiff's daily activities, treatment history, work history, and other factors. *See also* 20 C.F.R. § 404.1529(c)(3) (listing factors.)

ORDER

Pursuant to 42 U.S.C. § 405(g), sentence four, the decision of the Commissioner of

---

[2] For example, the ALJ did not include a sit-stand option in the RFC, even though plaintiff testified that he could not sit or stand for prolonged periods.

11

Social Security denying Ricky Chojnacki's application for disability insurance benefits is REVERSED AND REMANDED for further proceedings consistent with this opinion.

Entered this 16th day of April, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge